# FRANKLIN COUNTY.

### January Term, 1843.

Present Hon. CHARLES K. WILLIAMS, *Chief Justice.*
    "   STEPHEN ROYCE, &#125;
    "   ISAAC F. REDFIELD, &#125; *Assistant Justices.*
    "   WILLIAM HEBARD, &#125;

---

## The Religious Congregational Society in Bakersfield *v.* Joseph Baker and Silas Potter.

To maintain trespass, *quare clausum fregit*, the plaintiff must have either a title, or exclusive possession.

A meeting-house was built by an incorporated association by the name of the Union Society, for the use, exclusively, of the Religious Congregational Society;—*Held*, that the latter could not maintain trespass, *quare clausum fregit*, against a pew-holder, and another who occupied the pulpit on the Sabbath, and prevented them from performing divine service there.

THIS was an action of trespass for breaking and entering a certain meeting-house in Bakersfield. Plea not guilty, and trial by jury.

The plaintiffs, in order to support the issue on their part, introduced testimony tending to prove, that said meeting-house was built about the year 1830, and was, soon after, dedicated in the usual manner, and with the usual ceremonies adopted by that body of Christians denominated Congregationalists; that, from the time of the dedication down to the time that the alleged trespass was committed, the plaintiffs had uniformly held their meetings in said house, for religious worship, on the Sabbath and other occasions; that, during said time, they had hired and settled several clergymen over said denomination, and that, at the time of the alleged trespass, they had settled a Mr. Canfield over said society, who was then acting as an ordained clergyman among them, and had been, for about a year before; that said Canfield had uniformly held his meetings on the Sabbath for

FRANKLIN,
*January,*
1843.

Bakersfield
Cong. Soc.
*v.*
Baker & Pot-
ter.

religious worship in said house, and that, on the same Sabbath on which the alleged trespass was committed, the said Canfield and his congregation intended to hold a meeting for worship in said house; that, on that Sabbath, before the said Canfield and his congregation had assembled at said house, and while it was empty, the defendant, Potter, took said Baker, who was a clergyman of the Universalist order of Christians, to said house, opened the door and went in, in the usual manner and without doing any actual damage to said house; that immediately thereafter, the people assembled to listen to the religious instruction of said Baker, and for religious worship, and that said Baker occupied the pulpit of said house and performed divine service on said day.

The plaintiffs also proved that, in consequence of the pre-occupation of said house, by said Potter, Baker, and said congregation, on said day, the Congregational society were obliged to hold a meeting for worship at another house.

The defendants, in support of the issue on their part, offered in evidence the record of the constitution of a society or compact, formed in the year 1828, " by the name of the ' Union Society, for the purpose of building a meeting-house ' for public worship in said Bakersfield, according to the first ' section of an act for the support of the gospel, passed Octo-' ber 26, 1798"—by which record it appeared that the defendant, Potter, was a member of said society; and, it also appeared from the same record that the said house was " to be built exclusively for the use of the Religious Congregational Society in Bakersfield."

The defendants also offered in evidence the record of the organization of said Union Society, and of its various meetings and proceedings, and, among other things, of its by-laws, whereby it was provided that the funds for building said house should be raised by sale of the pews, and by subscription, if necessary; and also that no person should be a member of said society any longer than he should own a share in said house.

The defendants also gave in evidence a deed from Oliver Houghton to William Perkins and Comfort Barnes, members of said Union Society, and their associates, dated December 14, 1829, which deed conveyed the land on which said meeting-house was built.

They also gave in evidence four deeds, dated January 4, 1833, from Calvin Ewins, to the defendant, Potter, of pews in said house—said Ewins, as appeared of record, being the authorized agent of said society to deed the pews. They also gave in evidence a large number of deeds from said agent, to other persons, of pews in said house; and proved that persons now professing to be Universalists, owned pews in said house, to the amount of $1600, or more, and that they wished said house to be occupied for religious worship by the Universalist order of Christians, to which Potter, and said pew-owners, belonged, such a proportion of the time as their interest bore to the whole cost of the house.

FRANKLIN,
*January,*
1843.

Bakersfield
Cong. Soc.
*v.*
Baker & Potter.

The defendants also proved, that the defendant, Potter, was one of the building committee, originally chosen by said Union Society, and that, as such, he superintended and controlled the building of said house; that, soon after it was built, a lock was put on the outer door, and the key was committed to the defendant, Potter, as an officer of said Union Society, who had ever, thereafter, retained the same, though for a few years previous to the alleged trespass, he was not an officer of the said society. It appeared, also, that there was another key, kept by persons living nearer to said house, which had been mostly used, for several years previous.

The defendants also proved, that most, if not all of the repairs of said house, and alterations, had been made in pursuance of votes of the Union Society, and by subsequent contributions of individuals. They proved, also, that the Union Society uniformly held their society meetings in said house, and that preachers, of denominations of Christians other than Congregationalists, had, on three or four occasions preached there. It was proved, also, that the said meeting held in said house, by said Baker, was by the consent and approbation of said Barnes, and many other members of said Union Society, but not in pursuance of any vote of said society. It was, also, proved, that said Union Society always claimed to be the legal owners of said house, and to be in possession thereof, according to their constitution and by-laws.

There was no evidence tending to show that any person of the Universalist order had ever preached in said house,

FRANKLIN,
January,
1843.
———
Bakersfield
Cong. Soc.
v.
Baker & Pot-
ter.
prior to said alleged trespass, or, that any instance of preach-
ing in said house, by a clergyman of a different order from
that of the Congregationalists, prior to said alleged trespass,
had occurred against the will, or, without the consent of those
of the Congregational order.   The evidence tended to show,
that, at the meeting in said house, on the Sabbath next pre-
vious to the alleged trespass, the defendant, Potter, gave
notice that the defendant, Baker, would preach in said house
the next Sabbath, and that this was at once forbidden by one
of the congregation present.

Upon the foregoing evidence, the defendants contended,

1. That the Union Society were the legal owners of said
house ; that they had the legal right to the possession thereof,
and by construction of law, were in possession of the same.

2. That the only interest which the plaintiffs had, was
that of a *cestui que trust ;* and being such, they could not,
as a society, take and hold, actual possession of said house,
and could have no constructive possession, as they had no
legal title ; and could not, therefore, maintain this action.

3. That the plaintiffs' right, in said house, was a mere
incorporeal right, for an infringement of which, trespass was
not the proper remedy, but case.

4. That the plaintiffs, being a mere *cestui que trust,*
could not maintain trespass for an injury to the freehold, as
against the defendants, but that the Union Society, or, the
trustee, only, could maintain the action.

5. That, from the evidence, it was a case of *damnum
absque injuria,* merely, for which no recovery could be
had.

But the court decided against the defendants, on all the
positions so taken by them, and ordered a verdict to be taken
for the plaintiffs.   Verdict and judgment accordingly.   To
which decision of the court, the defendants excepted.

*H. R. & J. J. Beardsley,* and *T. Child,* for defendants.

By the records and deeds in evidence, in this case, it ap-
pears that the plaintiffs are not the legal owners, vested with
the legal title to the house, but that the " Union Society "
have the legal title, and that the plaintiffs are but the mere
*cestui que trust.*   The plaintiffs, therefore, cannot maintain
this action.

1. The "Union Society," having the legal title, are, by law, entitled to the possession, and are, in law, seized of the property. *The People* v. *Runkel*, 9 Johns. R. 147.

2. The plaintiffs, being the mere *cestui que trust*, having no legal title in the freehold, cannot maintain trespass. *The Duke of Newcastle* v. *Clark*, 2 Moore, 666 ; 1 Chitty's Pl. 51. The plaintiffs, as a corporation, cannot take possession in fact ; and an occasional occupation of the house, for the purposes of worship, by some of the individuals composing the society, is not such a possession in the corporation as will sustain this action. 8 Johns. R. 363.

For any injury done to the house, the trustee must sue— which is, in this case, the "Union Society." Suppose a perfect stranger, in passing, had beat down the door, surely, the trustee must sue for the injury. The gist of the action is the injury to the house, and not for the disturbance of any right ; for which latter act, case, and not trespass, should have been brought.

3. If the plaintiffs can sustain an action, it is case, for the interruption or disturbance of an incorporeal right, and not trespass for an injury to the freehold.

4. The defendant, Potter, being a legal proprietor in the house, had a right to enter peaceably and without doing any damage to the house, and occupy his own seat, and cannot be sued in trespass for so doing.

*J. & J. G. Smith*, for plaintiffs.

In relation to the first point in the case, urged by the counsel for the defendants in the court below, the plaintiffs contend—

1. That the "Union Society," having been legally organized, for the purpose of building a meeting-house *exclusively for the use* of the "Religious Congregational Society in Bakersfield," the deed of land, for the purpose of the erection of said house, to "William Perkins and Comfort Barnes, members of the Union Society, and their associates in said Society," was a trust deed, conveying the land to the Union Society in trust for the said Congregational Society, for the use and purpose specified in the constitution or compact of said Union Society, and for no other purpose.

2. That when the said meeting-house was built and *dedi-*

FRANKLIN
*January,*
1843.

Bakersfied
Cong. Soc.
*v.*
Baker & Potter.

FRANKLIN,
January,
1843.

Bakersfield
Cong. Soc.
v.
Baker & Pot-
ter.

*cated*, and when the Religious Congregational Society in Bakersfield had taken possession, the purposes of the trust estate were satisfied ; and the Union Society, having no *right* to the possession, could not be considered constructively *in* possession.    There is no provision or stipulation in the constitution or by-laws of the Union Society, by which it can be inferred that it was its purpose or intention to exercise any control over the house after it was finished.    The Union Society, after the possession of the house by the Congregational Society, could not maintain either ejectment or trespass against the plaintiffs, or any person occupying the house under them, any more than a landlord could against his tenant during the term of the lease, or the grantor against the grantee, who had taken possession under his deed.

It appears, by the by-laws of the Union Society, adopted on the 14th of September, 1828, that none but pew-holders could be members of said society after the house was built; —that, on the 15th day of November, 1830, said society appointed Calvin Ewins an agent to deed pews, who, on the 4th of January, 1833, and after the plaintiffs were in possession, deeded said pews, as by deeds referred to in the case ; that the *habendum et tenendum*, in each deed, was as follows, to wit: " To have and to hold the aforesaid pews, with all the privileges and appurtenances thereunto belonging, unto the said A. B., his heirs and assigns, *for the use* and purposes expressed and stipulated in the constitution and by-laws of said society, made and adopted, in relation to the building of said meeting-house, and the use to which the same is appropriated, and for no other use and purpose whatsoever."    Hence it appears that all who took deeds of pews in said house, and who *alone* were members of the Union Society, held whatever interest they had in said house in subjection to the right of the plaintiffs, which was a right to the absolute and exclusive use of said house for *all* the purposes for which it was built, so long as the Religious Congregational Society in Bakersfield had a corporate existence.    If the taking of deeds, as above mentioned, by all the individuals who constituted the Union Society, was not *ipso facto* a surrender of the legal estate to the Congregational Society, it is, clearly, a case where the law will *presume* a surrender to have been made.

FRANKLIN,
*January,*
1843.

Bakersfield
Cong. Soc.
*v.*
Baker & Potter.

This case comes within the principles laid down in 2 Leigh's N. P. 851–2–3, " That when the purposes of the trust estate have been satisfied, or when the *beneficial occupation* by the possessor induces a supposition that a conveyance of the legal title has been made, or when the trust is a plain one, and a court of equity would compel the trustees to make a conveyance, a surrender by the trustees will be presumed, thereby clothing the *cestui que trust* with the legal title, and enabling him to recover, even in an action of ejectment. This doctrine is fully sustained by the following cases : *Henderson* v. *Staple*, 2 T. R. 684 ; *Syburn* v. *Slade*, 4 T. R. 682 ; *Graham* v. *Scott*, 11 East, 478 ; *Byron* v. *Dearborn*, 8 East, 248 ; *Jackson* v. *Matsdorf*, 11 Johns. R. 91.

All the members of the Congregational Society became members of the Union Society, and it appears, by the terms of the compact of said society, that the house was to be built *exclusively for the use* of the plaintiffs. The title to the land had been secured, the house had been completed, and *formally* dedicated, and the plaintiffs were in full and peaceable possession. There were no further acts in relation to the house contemplated by the Union Society ; there was nothing further for them to do. Hence we say that the trust estate was satisfied, when the plaintiffs took possession of the house—so much so, that a court of equity will compel a conveyance of the legal estate.

When a trust of land is *wholly nominal,* as in this case, the trust becomes executed in the *cestui que trust,* who may maintain ejectment in his own name, without any previous conveyance from the trustee. 21 Wend. 147. That the trust, in this case, was merely nominal, appears from the fact that the house was built for parochial purposes only, and exclusively for the use of the plaintiffs, and never could be rightfully used for any other purpose, or used at all by any other person or persons.

In relation to the second point urged by defendant, the plaintiffs contend :

1. That the Congregational Society, having been duly and legally organized prior to the organization of the Union Society, and to the execution of the deed of the premises, was a body corporate and politic, and could take, and hold, land

FRANKLIN,
January,
1843.

Bakersfield
Cong. Soc.
v.
Baker & Pot-
ter.

and maintain trespass for any injury done to the *possession*.

If, in this case, the legal title has not, in *fact*, or by *legal presumption*, been surrendered by the Union Society, and if the Congregational Society be regarded as a *cestui que trust*, still, being in possession, this action can be maintained against the defendants, they being strangers. 1 Chit. P. 62.

It appears from the case that the plaintiffs, from the time of the dedication, in 1830, to the time that the trespass was committed, had been in the *actual* possession of the house—all the possession that the subject was susceptible of. This possession was sufficient to enable the plaintiffs to maintain trespass against strangers. 8 J. R. 366–7; *Green* v. *Cady and others*, 9 Wend. 414. If, however, it be true, as the defendants contend, that the Congregational Society cannot, *as such*, have *actual* possession, still, having the right of possession, the society were *constructively* in possession; and such a possession is sufficient to maintain trespass. 8 Johns. R. 366–7; 2 Leigh's N. P. 1438; 9 Conn. 216; 7 do. 232; 10 do. 225; 11 do. 260.

In England the possession of the church is in the parson, and he can maintain trespass against any person for preaching in his church, without his permission. 1 Leigh's N. P. 1441; 12 Mod. 420–33. In this country, the possession of the meeting-house is in the congregation, 1 Swift's Dig. 512, unless there is a statute provision, as in the state of New York, where the possession is in trustees. 9 Wend. 414; 8 J. R. 366–7. Whoever has the possession, actual or constructive, can maintain trespass. In Massachusetts it is well settled, that incorporated parishes can, *as such*, have the possession and maintain trespass for any unlawful entry into a meeting-house. *Inhabitants of Medford* v. *Pratt*, 4 Pick. 222.

In relation to the third point, it is contended by the plaintiffs that, having, not only the *actual* possession of the house in question, but, by the terms of the compact of the Union Society, the right of possession, their interest in the house cannot be regarded as an *incorporeal* right.

Their right was an absolute, unconditional right to the *actual* and *exclusive* possession for parochial purposes, and no more partakes of the character of an *incorporeal* right, than does that of a tenant in actual possession of land by

FRANKLIN,
January,
1843.

Bakersfield
Cong. Soc.
*v.*
Baker & Potter.

virtue of a durable lease. Sw. Dig. 104. But suppose it be true that the right of the plaintiffs is *incorporeal*, still, it is contended that trespass will lie for the infringement of it. 8 Johns. R. 366–7 ; Cro. Car. 201, 486 ; Dalton, 115.

In answer to the fourth point, it is contended, that the defendants were strangers to the title. They entered without permission, either express or implied, from either the plaintiffs or the Union Society. But if the defendants had showed a license from the Union Society, it would not have availed them, even on the supposition that the legal title had never been surrendered, for that society had no right to do any act that would have infringed or impaired the right of the plaintiffs in the free, absolute, and uninterrupted use of said house.

The damage done in this case was to the possession—and the Union Society having neither the *actual* nor *constructive* possession, could not maintain any action for injuries done to the possession. Hence, if the plaintiffs cannot maintain this action, the defendants or any other intruders may, at any time, and for any purpose, enter the house with impunity. It is contended, that any occasional use of the house by the Union Society, for the purpose of holding meetings, must be presumed to have been by the permission of the plaintiffs, as there is no provision in the constitution or by-laws of said society by which any right to hold society meetings in said house is reserved or secured. Such occasional use would not affect the exclusive character of the plaintiffs' possession.

As to the 5th point, the following familiar principle of law is applicable :—" A mere entry on land without lawful right ' is a trespass, though no actual damage be done, for the ' law will presume damage ; and an entry into a house, ' though the door be open, if there be no consent of the ' owner." 3 Bl. Com. 209–10 ; Swift's Dig. 514.

Thus far the case has been examined on the part of the plaintiffs, as if this was a *trust estate*. But is it a trust estate ? It appears by the terms of the compact of the Union Society that the house was built exclusively for the use of the plaintiffs. Hence, the house, or at least, the *use of the house* must be regarded as a *donation* from the Union Society to the plaintiffs. It could not be a trust estate, for no other person or body could receive the benefit

FRANKLIN,
January,
1843.

Bakersfield
Cong. Soc.
v
Baker & Pot-
ter.

of the donation. *First Parish in Sutton* v. *Cole,* 3 Pick.
238.

The building of the house by the Union Society *exclusively
for the use of the* Congregational Society, must be regarded
as a *dedication* of the house to the plaintiffs; and being
such, the plaintiffs can hold it, even against the Union Soci-
ety. 3 Kent's Com. 450; *Town of Pawlet* v. *Clark,* 9
Cranch, 292; *Town of Chatham* v. *Brainerd and others,*
11 Conn. R. 60.

If the fee of the land is still to be regarded as in the
Union Society, the plaintiffs, having the right to *the use of
the house,* can maintain trespass. 1 Pick. 224; 4 Mass. 266.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—This is an action of trespass, *quare
clausum fregit,* for breaking and entering a certain meeting-
house in Bakersfield. To maintain this action, it is neces-
sary that the plaintiffs should have, either the exclusive pos-
session of the *locus in quo,* or, be the owner thereof, and
·no adverse possession in any other person; and this will
lead to the enquiry,—in whom was the fee of the place, &c.,
at the time of the alleged trespass? or, in whom was the fee,
and, in whom was the possession? The plaintiffs are an or-
ganized society, or body corporate; and there is, also, an-
other organized society, or body corporate, in the same town,
by the name of the Union Society, who claim to be the own-
ers of the meeting-house in question.

From an examination of all the papers in the case, it is
evident, that the fee of the land, on which the meeting-house
stands, as well as of the meeting-house, is in the association,
formed under our statute, called the Union Society. In
England, the soil and freehold of the church, is in the parson,
who is a sole corporation. In this country, it depends on
the contract and agreement which may be made when the
church is built. Where parishes are incorporated, and
churches are built for them, the fee is usually in them, as it
commonly is, or was, in Massachusetts and Connecticut; and
this must be the meaning of Ch. J. Swift, in his digest, where
he says, the fee is in the congregation. The congregation, as
such, are not capable of taking a fee. As many of our meet-
ing-houses are now built, the fee may be in one corporation,

while the use, and enjoyment, may belong to another. In such cases, those, for whose benefit they are erected, and who are entitled to the use, and enjoyment of the same, cannot be disturbed, or interrupted therein, without having an appropriate remedy.

<div style="float:right">Franklin, January, 1843.

Bakersfield Cong. Soc. v. Baker & Potter.</div>

By the articles of association, and by the subscription, under which the meeting-house in question was built, the several pew-holders, from time to time, were the owners of the fee, and might be composed of different members from those which composed the other association, who, also, have a corporate existence, called the Religious Congregational Society. The Union Society, being the owners of the freehold, can, alone, maintain an action of trespass, *quare clausum fregit*, against any one, for breaking and entering the meeting-house, unless they have given to the latter society, the exclusive possession of the same. This they have not done, nor consistently with their articles of association, or by-laws, could they do. The several pew-holders had a right to their pews and seats in the house, of which they could not be divested, except by their own consent. The Religious Congregational Society are entitled to the use and enjoyment of the house for all religious purposes, for performing divine service, for prayer, for praise, for speaking and hearing the word of God, according to the usages and customs of a Congregational society; and if they are disturbed or interrupted therein, they have a remedy, but not by an action of trespass, *quare clausum fregit*. That the right to the use of a house for such, or similar purposes, will not enable them to maintain such an action, was fully recognized and established, in the case of *Milford* v. *Godfrey*, 1 Pick. 91. That the owner of a pew, cannot maintain such an action as this, was said by Buller, J., in the case of *Stocks v. Booth,* 1 Term. 428, and also, by Abbot, Ch. J., in the case of *Mainwaring* v. *Giles,* 5 Barn. & Ald. 256, although, it might, in some cases, be maintained in Massachusetts, where their statutes declare pews to be real estate.

The plaintiffs, however, contend that they are the *cestui que use,* and as such, are the owners, or occupiers of the house, and, that the court might direct the jury to presume a grant. The Religious Congregational Society, however, had not such a use, as would be executed by the statute of Henry

VIII, and the possession transferred to the use, if, in any case, a corporation could be so seized of an estate in trust; nor could the court direct the jury to presume a grant, as the very object of the association of the Union Society, was, to secure to the several pew-owners their right and interest therein, and which would be defeated, if such a grant could be either made, or presumed. Neither did the dedication of the house make any alteration, either in the ownership, or possession, or change any of the rights, before existing therein. It recognized the right of the plaintiffs therein, but did not give them such an occupancy, or *possessio pedis*, as is always required and implied in the occupancy of real estate, to enable the possessor to maintain an action of trespass.

From the views already expressed, it appears that some of the requests of the defendants, to the county court, to charge the jury, should have been answered in their favor; and the direction should have been, that the plaintiffs could not maintain this action.

The judgment of the county court is reversed.