REUBEN CHAPLIN AND OTHERS *v.* L. D. HILL AND JOHN STILES.

*Prudential Committees of School Districts, their power. School Districts, their control of School Houses.*

By implication, the prudential committee of a school district must have the right to occupy the school house, when the school is in operation; but the statute or implications growing out of the general powers and duties of the prudential committee, does not give him the exclusive control of the school house, in his district, that power must be in the district.

Chaplin et al. *v.* Hill et al.

Where a district, at a meeting for that purpose, voted to have a private school in the school-house, and nothing appeared, but if it had been permitted to proceed, it would have answered all the purposes of a public school, and been open to all the children in the district, and taught all the branches of common school instruction enumerated in the statute, and no others; under these circumstances, it was held, that there was nothing inconsistent with the rights of the district, in allowing the school to continue there *for the time being merely ;* but that the district clearly could not confer any exclusive right to the possession of the school-house, for any definite time, upon any one.

It was also held, that the privilege, which was conferred upon the plaintiffs was of a legally beneficial character, and the defendants for causelessly and wantonly disturbing them in the enjoyment of the same, are liable to an action, and that *case is* the appropriate remedy.

The inhabitants of the school district have no estate in any form, in the property belonging to the district, and the district alone can bring trespass *quare clausum fregit.*

This was an action on the
CASE, to recover damages against the defendants, for preventing the plaintiffs from occupying a certain school-house. Plea, general issue, and notice of special matter, and trial by jury.

It was admitted on trial, that school district No. 6, in Waterford, was a regularly organized district, and that the school house in said district, belonged to said district, and that the plaintiffs were all residents and voters in said district. It was also admitted that defendant Stiles, was at the time, the prudential committee in said district.

The plaintiffs then introduced evidence tending to prove, that in the month of September, 1848, the plaintiffs employed a teacher, and set up a private school in the school-house in said district, the teacher being a daughter of one of the plaintiffs, and the other plaintiffs sending their children to the school. That before the school commenced, the defendant Stiles was applied to for the key of the school-house, which he declined to furnish.

The plaintiffs then procured a key which would open the door, and the school was kept for one or two days, when the defendants went and fastened the door of the school-house, upon the inside ; an application was thereupon made to the clerk of the school district, to call a school meeting, and that a school meeting was called and holden on the second day of October, 1848, at which meeting a vote was passed to have a private school in the school-house.

The plaintiffs offered the records of the district, of the proceedings of this meeting in evidence, to which defendants objected, as not supporting the plaintiffs' declaration; but the same were admitted, to which defendants excepted.

The plaintiffs then proved, that after said meeting plaintiffs again commenced their school in the school-house, that the same was continued for three days, when the defendants went to the school-house, and removed the stove and pipe, and windows of the house, whereby the house was placed in such condition, that plaintiffs were prevented from continuing their school in the house, and that they were obliged to procure another place for the same.

The defendants claimed, that this evidence was not sufficient to entitle plaintiffs to recover, especially in this form of action.

But the court instructed the jury, that upon the facts admitted in the case, if the jury found the facts, which plaintiffs' evidence tended to prove, to be true, the plaintiffs were entitled to recover.

The jury returned a verdict for the plaintiffs. To the charge of the court and refusal to charge as requested the defendants excepted.

*E. A. Cahoon* and *H. S. Bartlett* for defendants.

1. The action should be *trespass* instead of *case*. The plaintiffs, whether legally or otherwise, had the exclusive possession of the *locus in quo*, and held, as they alledge, by virtue of a *lease* from the district. The acts charged to have been committed by defendants, by which the possession of plaintiffs was disturbed, were directly the result of force, hence *trespass*. How then, since injury to possession is the gist of the action, can case be sustained? For injuries to the reversion, the landlord must sue in case; and for injuries to the possession, the tenant must sue in *trespass*.

The case of *Bakersfield Cong. Soc.* v. *Barker & Potter*, 15 Vt. 119, relied upon by plaintiffs does not support their position. In that case, the court held the possession to be in a third person,— the Union Society, instead of plaintiffs; on page 129, WILLIAMS, J. says, " the plaintiffs could have sustained *trespass*, had the Union Society surrendered to them the exclusive possession." It thus becomes, we think, a conclusive authority for defendants.

2. The district records were improperly admitted to prove a lease or dedication of school-house to the plaintiffs. And there is a fatal variance between the declaration and proof.

The declaration alledges a lease of the school-house to plaintiffs "on the 2d day of October, 1848, during the remainder of the fall then commenced, or until it should be occupied by the district for a winter school." The record proves nothing of the kind.

3. The district had no power to grant the use of their school-house to the plaintiffs, for the purposes alledged. Existing solely by virtue of the statute, its corporate rights are strictly defined, and are extended to no purpose save that specially contemplated by law, viz. a *common school.*

4. Plaintiffs are *joint tenants in common* with defendants, and hence cannot sue each other at common law, excepting actions of account, or where there has been a destruction of company property.

5. The suit can be sustained, if at all, only by the district.

*O. T. Brown* and *J. D. Stoddard* for plaintiffs.

Defendant Stiles can no more justify, under authority of his office, the act complained of, than any other member of the district. The school-house belonged to the district, as a municipal corporation, having the dominion, direction, subject to the use and enjoyment of the same by its individual members, for the purpose of keeping schools therein, which might be supported by private contribution, or under the authority of the district.

The district, therefore, for the removing of the windows by the defendants, and carrying away the furniture, or for any other direct injury to their property, &c., can maintain *case* only.

If these inferences are sound, the school house being unoccupied, the plaintiffs had the right to use it for a subscription or private school, independent of any direction of the district; this disposes of the question of *variance. People* v. *Runkle,* 9 Johns. 147. *Duke of Newcastle* v. *Clark,* 2 Moore, 666. *Bakersfield Cong. Soc.* v. *Barker et al.,* 119.

By THE COURT. One question made in this case seems to be, how far the prudential committee of a school district may be said to have an exclusive control of the district school-house. This must depend upon the statute. The district must possess this control for all legitimate purposes, unless it is given to the prudential committee by the statute.

But the statute does not seem in terms to have conferred any such exclusive control of the school-house upon the committee. He is to keep the school-house in "good order;" to see that fuel and furniture, &c., are provided; and in regard to employing and removing teachers, he has, by express statute, the exclusive control. And, by implication, he must have the right to occupy the school-house, when the school is in operation, or else his power to appoint and remove teachers would be of very little importance. Beyond this, we do not perceive anything in the statute, or the implications growing out of the general powers and duties of prudential committees of school districts, which should give them the exclusive control of the school-house, in their district. If not, that must be in the district.

The question then arises, whether the districts can give permission to have their school-houses used for such purposes as private schools. They evidently could not put them to uses altogether aside of the general objects of their erection. They could not, at once, erect them into academies or colleges. But we think the statute did purpose to give them considerable latitude in this matter. They may raise money by subscription, or apportioned upon the scholars who attend the school, for the support of schools. This school was probably somewhat different from one supported in either of these modes, and was not a public school. But nothing appears, but if it had been permitted to proceed, it would have answered all the purposes of a public school, and been open to all the children in the district, and taught all the branches of common school instruction enumerated in the statute, and no others.

Under these circumstances, we see nothing inconsistent with the rights of the district, in allowing the school to continue there *for the time being merely.* The district clearly could not confer any exclusive right to the possession of the school-house, for any definite time, upon any one. But while they could not use it for a school themselves, we do not perceive any perversion of the general rights and duties of districts, to allow them to license others to give similar instruction therein, upon terms which they approve.

This being a power of this subordinate and limited character, which was conferred upon the plaintiffs, they clearly could not sustain an action of trespass *qu. clau.* for a violation of it. If they have any redress for the inconvenience which they sustained, it

must be by an action upon the case. And it seems to us, that the privilege which was conferred upon the plaintiffs was of a legally beneficial character, and that the defendants, for thus causelessly and wantonly disturbing them in the enjoyment of the same, are justly liable to an action, and if to any, to this action. As to the form of action, it seems to us that the case, in principle, is not essentially different from that of *The Bakersfield Society* v. *Barker & Potter*, 15 Vt. 119. The inhabitants of the school district have no estate in any form, in the property belonging to the district. The district alone could bring trespass *qu. clau.* undoubtedly.

The plaintiffs are not *directly* damnified by the act of the defendants ; the damage to them is not the injury to the school-house, but this *is* the damage to the district. The injury to plaintiffs, is *indirect*, it is the *consequential* injury to their privilege of using the building for the time being, for a particular purpose. The injury to them would have been no more, if the school-house had been absolutely destroyed, and no less, if they had been denied the exercise of their right or privilege in any other way.

Judgment affirmed.